**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTIAN ALESIUS**<br>461 Peregrine Drive<br>North Huntington, PA 16542<br>*Resident of Westmoreland County* | Civil Action No.:   2:20-cv-1067 |
| **BRENDAN BEAULIEU**<br>211 Elba Drive<br>Mooresville,NC 28115<br>*Resident of Iredell County* | Collective/Class Action |
| **BRIAN STENSTROM**<br>1254 South 22nd Street<br>Philadelphia, PA 19146<br>*Resident of Philadelphia County* | Jury Trial Requested |
| **ROBERT WATERHOUSE**<br>2110 Sharon Avenue<br>Charlotte, NC 28211<br>*Resident of Mecklenburg County* | |
| *And* | |
| **NICK CUSOLITO**<br>431 Pearce Road<br>Pittsburgh, PA 15234<br>*Resident of Allegheny County* | |
| Plaintiffs, | |
| ***Individually and on Behalf of All<br>Similarly Situated Employees*** | |
| v. | |
| **PITTSBURGH LOGISTICS SYSTEMS,<br>INC. d/b/a PLS LOGISTICS SERVICES**<br>3120 Unionville Rd #110<br>Cranberry Township, PA 16066 | |
| Serve: Registered Agent Solutions, Inc.<br>        2138 Silas Deane Highway Suite 101<br>        Rocky Hill, CT 06067 | |
| Defendant. | |

## COLLECTIVE ACTION COMPLAINT FOR WAGES OWED

CHRISTIAN ALESIUS, BRENDAN BEAULIEU, BRIAN STENSTROM, ROBERT WATERHOUSE and NICK CUSOLITO,  Plaintiffs, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl and Hardin Thompson P.C., hereby submit their Complaint against PITTSBURGH LOGISTICS SYSTEMS INC., d/b/a/ PLS LOGISTICS SERVICES, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, interest, reasonable attorneys' fees and costs under the Pennsylvania Minimum Wage Act 43 P.S. § 333.104 (c) and 34 Pa. Code § 231.41 (hereinafter, "PMWA") and the Pennsylvania Wage Payment and Collection Law 43 P.S. § 260.3 (hereinafter, "WPCL"); and in support thereof, state as follows:

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims, pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3.      Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Pennsylvania. Defendant employs numerous residents of the state of Pennsylvania, which includes members of the proposed class. A substantial part of the events or omissions giving rise to the claims also occurred in Pennsylvania.

## THE PARTIES

4.      Pittsburgh Logistics Systems, d/b/a PLS Logistics Services (hereinafter, "Defendant") is an incorporated logistics and transportation company registered in the state of Pennsylvania.

5.      Defendant's principle corporate office is in Cranberry Township, Pennsylvania.

6.      Defendant operates over ten (10) offices across the United States.

7.      Defendant is subject to the FLSA, PMWA and the WPCL by the nature of its business and the amount in revenues generated.

8.      Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

9.      Plaintiff Christian Alesius (hereinafter, "Alesius") is an adult resident of Westmoreland County, Pennsylvania.

10.     Plaintiff Brendan Beaulieu (hereinafter, "Beaulieu") is an adult resident of Cabarrus County, North Carolina.

11.     Plaintiff Brian Stenstrom (hereinafter, "Stenstrom") is an adult resident of Philadelphia County, Pennsylvania.

12.     Plaintiff Robert Waterhouse (hereinafter, "Waterhouse") is an adult resident of Mecklenburg County, Pennsylvania.

13.     Plaintiff Nick Cusolito (hereinafter, "Cusolito") is an adult resident of Allegheny County, Pennsylvania.

14.     Plaintiffs worked for Defendant, who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), the PMWA, 43 P.S. § 333.104 (c) and 34 Pa. Code § 231.41, and the WPCL, 43 P.S. § 260.3.

15.     At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce by the nature of their duties performed as part of their employment with Defendant.

16.     For the duration of the relevant period, Plaintiffs duties were those of non-exempt employees of Defendant.

17.     Defendant however misclassified Plaintiffs and others similarly situated as exempt employees.

18.     From approximately May 2018 to February 2019, Plaintiff Alesius was employed as an Account Executive Trainee (AET) for Defendant. He worked out of Defendant's office in Pittsburgh (Southside), Pennsylvania.   In approximately March 2019, he moved to the position of Logistics Coordinator for the Government sector and remained in that position until he left on December 16, 2019.

18.     From approximately January 2019 until July 2019, Plaintiff Beaulieu was employed as an Account Executive Trainee ("AET") for Defendant. He worked out of Defendant's office in Charlotte, North Carolina.

19.     From approximately September 2018 until November 2018, Plaintiff Stenstrom worked as an Account Executive Trainee ("AET") for Defendant. He worked out of Defendant's office in Pittsburgh, Pennsylvania.

20.     From approximately September 2018 until April 2019, Plaintiff Waterhouse was employed as an Account Executive Trainee ("AET") for Defendant. He worked out of Defendant's office in Charlotte, North Carolina.

21.     From approximately June 2019 until December 2019, Plaintiff Cusolito was employed as an Account Executive Trainee ("AET") for Defendant.   He worked out of Defendant's office in Pittsburgh, Pennsylvania.

22.     At all times relevant to this Complaint, Defendant supervised the duties performed by Plaintiffs and its other AETs.

23.     Defendant controlled Plaintiffs' tasks and the tasks performed by other similarly situated employees.

24.     Defendant was actively engaged in the management and direction of Plaintiffs and other AETs.

25.     Defendant set Plaintiffs' schedules and the schedules for others similarly situated.

26.     Defendant had the power and authority to change the course of Plaintiffs' and other AETs' duties.

27.     Defendant possessed and exercised the authority to determine the hours worked by Plaintiffs and other similarly situated employees but had no procedures in place to record or maintain a record of hours worked by Plaintiffs since they classified Plaintiffs as salaried exempt.

28.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and method of pay.

29.     Plaintiffs and other AETs recognized Defendant's authority and complied with Defendant's instructions.

30.     Defendant had hiring and firing authority over Plaintiffs.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

31.     Defendant provides freight brokerage and third-party logistics services to clients across the country. Defendant's business centers on assisting its clients with delivering their products through purchasing third-party freight transportation services on their behalf.

32.     To assist its clients with their transportation needs, Defendant staffs Account Executive Trainees, ("AETs") at each of its sales offices nationwide.

33.     Defendant hired Plaintiffs and other similarly situated employees to work as AETs. Their work was primarily attempting to identify and obtain new clients for Defendant and serviceing existing clients as assigned.

34.     AETs were required to perform basic internet searches in order to identify companies who were potentially in need of Defendant's services. They were then required to contact each company in hopes of obtaining additional clients for the Defendant.

35.     Plaintiffs and other AETs also had to prepare a daily report which listed the companies they called. It was common for these lists to contain as many as one hundred (100) companies. They were also required to disclose their list to their team manager for approval.

36.     AETs began their day by meeting with their team manager, who was responsible for making and reviewing their daily assignments. After the morning meeting, Plaintiffs and other AETs would begin making their sales calls.

37.     On each call, they were required to follow prescribed talking points highlighting the advantages of Defendant's brokerage and logistics services. If they were successful in obtaining a new client for Defendant, Plaintiffs and other AETs would automatically become that client's point of contact for all services subsequently provided.

38.     In addition to soliciting new clients, Plaintiffs and other AETs also had to maintain constant contact with the dozens of clients they were already assigned. AETs received multiple inquiries from their existing clients each day. Clients would frequently call to ask whether they could obtain freight brokerage services in a particular region, or if they could arrange to transport their products at a certain time. Plaintiffs were under constant pressure to ensure that their clients' specific requirements were met.

39.      Plaintiffs and other AETs would solicit third-party freight transporters who were capable of accommodating a client's particular service request. This was often accomplished through posting a work-order on a third-party website that outlined the requirements of each service request in detail. Plaintiffs had to constantly monitor the website for purposes of checking the status of their posting.

40.     Upon identifying a transportation company that could complete the service, Plaintiffs and other AETs were required to handle all logistics. This included having to schedule the delivery and make sure that a client's order was correct.

41.     While their products were in-transit, Defendant's clients would routinely call to inquire about the status of their deliveries. Plaintiffs and other AETs were required to promptly respond to these inquiries. This was done by logging-in to Defendant's tracking software. The software was capable of providing details regarding the exact location of a client's shipment, which they would then relay to their clients. They also had to notify Defendant's clients when their products arrived at their destination.

42.     AETs also had to maintain constant communication with the freight transporters who were responsible for delivering a client's products. It was routine for freight drivers to have questions regarding their transportation order. They would often call to verify the correct quantity

of a product, or confirm the order number for the pick-up or drop-off location. Plaintiffs and other AETs were tasked with immediately providing this information, regardless of the time the freight drivers called.

43.     To fulfill Defendant's requirement of promptly responding to a driver's inquiry, Plaintiffs and other AETs were required to provide the drivers their personal cell phone numbers. For the same reasons, they also had to provide their telephone numbers to Defendant's clients. This ensured that AETs would be available at all hours of the day and night to provide any needed updates.

44.     Plaintiffs and other AETs also had to regularly update their clients' accounts through use of Defendant's share drive. The updated information was widely available to other team members and closely monitored by Defendant's managers. AETs had to ensure that a client's activities were documented in real-time. The software would indicate whether all of a client's activities were properly tracked.

45.     Plaintiffs and other AETs were also responsible for informing Defendant's accounting department of all services a client received. The accounting department would then generate an invoice that AETs would have to forward to Defendant's clients. Plaintiffs and other AETs were also responsible for responding to any basic questions that clients had regarding this invoice.

46.     Scheduling in-person meetings between Defendant's clients and senior-level employees was another one of their duties. Plaintiffs and other AETs also had to attend these meetings for purposes of recording notes and performing other basic tasks.

47.     All of Plaintiffs' and other AETs' tasks were basic in nature. To perform their duties, they did not need specialized degrees or certifications.

48.   Plaintiffs' and other AETs' duties did not require the use of analysis. They simply had to follow Defendant's protocols when performing their daily tasks. They had to seek approval from Defendant's managers prior to performing any tasks that did not conform to these protocols.

49.   Plaintiffs' and other AETs' tasks were essentially to facilitate communication between Defendant's clients and third-party vendors and to arrange and confirm delivery of those clients product. They were required to follow Defendant's procedures to obtain and relay this information as there were guidelines covering to each task they performed.

50.   Defendant's guidelines did not require Plaintiffs and other AETs to identify company needs, nor require them to evaluate or modify Defendant's business procedures or agenda.

51.   Plaintiffs and other employees similarly situated had little to no discretion in performing their duties for Defendant.

52.   They did not have to exercise independent judgment when performing their daily tasks.

53.   Plaintiffs' and other AETs' tasks did not require them to interpret information, or write substantive reports.

54.   Plaintiffs and other AETs were required to follow all of Defendant's instructions. Their duties were closely supervised by Defendant's managers at all times.

55.   Plaintiffs and other AETs adequately performed their duties and satisfied the requirements of their position to benefit Defendant.

56.   From approximately  May 2018 to February 2019,  Plaintiff Alesius was paid an annual salary of  thirty-six thousand dollars ($36,000) for his work as an AET.   From

approximately March 2019 to December 2019, Plaintiff Alesius was paid an annual salary of thirty-eight thousand dollars ($38,000) for his work as a Logistics Coordinator.

56.     From approximately January 2019 until July 2019, Plaintiff Beaulieu was paid an annual salary of thirty-three thousand dollars ($33,000) for his work as an AET.

57.     From approximately September 2018 until November 2018, Plaintiff Stenstrom was paid an annual salary of thirty-nine thousand dollars ($39,000) for his work as an AET.[1]

58.     From approximately September 2018 until April 2019, Plaintiff Waterhouse was paid an annual salary of thirty-six thousand dollars ($36,000) for his work as an AET.

59.     From approximately January 2019 to December 2019, Plaintiff Cusolito was paid an annual salary of forty-five thousand dollars ($45,000) for his work as an AET.

60.     Upon the commencement of their employment, Defendant advised Plaintiffs and other AETs that their schedule would be from 7:45 a.m. to 5:15 p.m., Mondays through Fridays. This was to include an hour break for lunch. However, they were required to work far more hours in order to complete their required duties.

61.     Defendant promoted a "24/7" work environment. It was routine for Plaintiffs and other AETs to begin working as early as 6:30 a.m. and continue to work until 12:00 a.m. or later. It was not uncommon for Plaintiffs and other AETs to answer work-related calls at all hours of the day and night. Their workload also required them to regularly work on weekends.

62.     Plaintiffs' and other AETs' workload was extremely heavy. Having to make dozens of calls to potential new clients each day and constantly respond to phone calls and e-mails from existing clients or transportation vendors required them to work far more than their scheduled

---

[1] AETs were also told they could receive up to a three percent (3%) commission. However, their actual receipt of these funds was inconsistent and never resulted in more than nominal sums.

hours. The responsibility of having to keep track of their clients' product shipments also required them to work around-the-clock.

63.     Having to regularly communicate with third-party transporters also caused AETs and to work significant overtime. Freight drivers would constantly call with inquiries regarding their pick-ups and deliveries. Answering these nonstop inquiries required Plaintiffs and other AETs and to work overtime consistently.

64.     The time it took to answer and document these inquiries also caused them to work overtime.  For each inquiry, AETs had to manually enter basic queries into Defendant's databases where most of the product and transit information was stored. Searching for this information was often very time-consuming.

65.     Having to constantly perform these searches often prevented Plaintiffs and other AETs  from completing their regular assignments. This forced them to complete these assignments long after their scheduled shifts had supposedly ended.

66.     They also consistently worked overtime to prevent any disciplinary action. Failure to promptly respond to Defendant's clients and third-party vendors could lead to reprimands, both written or verbal and could result in adverse effects on their compensation. For instance, if a third-party shipping company failed to properly complete one of Defendant's clients' shipments, this would result in a reduced fee paid by the client. The difference between the fee for an proper delivery and the fee for a late or incomplete delivery could be docked from Plaintiffs' and other AETs' paychecks.

67.     To avoid having their pay docked, AETs would make multiple calls to the freight haulers who were responsible for a client's shipment to ensure that all deliveries were correct. The sheer volume of these calls often resulted in Plaintiffs and other AETs working excessive hours.

68.     The frequent turnover at Defendant's offices also contributed to the excessive hours worked by AETs. Over the course of Plaintiffs' employment, there was a continual decrease in the number of AETs that Defendant staffed. This resulted in Plaintiffs being assigned an even greater number of clients, increasing their already excessive workload.

69.     The requirements of their workload resulted in overtime being a regular part of Plaintiffs' and other AETs' employment. They consistently worked as many as sixty (60) to seventy (70) hours each week and sometimes more.

70.     Defendant was aware that Plaintiffs and other AETs consistently worked overtime, for which they were not compensated.

71.     Defendant suffered, permitted and in fact required Plaintiffs and other AETs to work these overtime hours.

72.     Because they were paid a salary, Plaintiffs and other AETs received the same regular biweekly compensation, regardless of the number of hours they worked each week.

73.     Defendant refused to pay its AETs overtime wages.

74.     Plaintiffs and other similarly situated AETs were not compensated at a rate of "time and a half" their regular rate of pay for all hours worked over forty (40) each week.

75.     There is no bona fide dispute that Plaintiffs and other AETs are owed overtime wages.

76.     Based on the duties performed and the nature of their work, the AETs cannot reasonably be classified as falling within any exemption within the FLSA or applicable state wage or employment law.

77.     In bad faith, Defendant willfully withheld the overtime wages owed to Plaintiffs and its other AETs.

78.     Plaintiffs and other similarly situated AETs should be classified as non-exempt employees of Defendant, entitled to overtime compensation.

79.     Consequently, on behalf of themselves and all similarly situated employees, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

80.     Plaintiffs and other similarly situated employees worked as AETs for Defendant.

81.     The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) within a single workweek.

82.     Defendant knew that Plaintiffs and similarly situated employees customarily worked over forty (40) hours per week.

83.     Defendant suffered, permitted or required Plaintiffs and other AETs to work more than forty (40) hours per week.

84.     Defendant knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

85.     Defendant knew or should have known Plaintiffs and those similarly situated were not compensated for overtime worked.

86.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

87.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek

within the applicable statute of limitations. Plaintiffs make these same demands on behalf of all members of the putative collective class.

88.     Plaintiffs consent to be party plaintiffs in this matter. Plaintiffs' consent forms are attached to this Complaint as Exhibit 1.

89.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

90.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

91.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

92.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

93.     Upon information and belief, others will choose to join Plaintiffs in this action by opting-in to this lawsuit in order to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER PENNSYLVANIA MINIMUM WAGE LAW

94.     Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and other current and former employees who worked for Defendant as AETs in Pennsylvania.

95.     The class Plaintiffs seek to represent is defined as:

> All individuals who are or were employed by Defendant as salaried AETs and/or in similar positions in the state of Pennsylvania, and who have been denied overtime compensation as required by the respective state labor laws and implementing regulations at any time within three (3) years prior to the filing date of this action through the date of final disposition (the "proposed class").

96.     The proposed class is so numerous that joinder of all members is impracticable. During the relevant period, Defendant employed dozens of AETs in the state of Pennsylvania.

97.     The claims of the named Plaintiffs are typical of the members of the proposed class. The named Plaintiffs and those similarly situated regularly worked more than forty (40) hours per week and were denied overtime compensation. Each member of the class was paid a salary that remained unchanged, regardless of the number of hours they worked each week. As a result, each and every class member suffered the same harm.

98.     Each class member's claim is controlled by Pennsylvania's wage and hour statutory scheme and one set of facts. Pursuant Fed. R. Civ. P. 23(b)(3), questions of law and fact are common to the class and predominate over any individual questions. Such common questions of law and fact include, but are not limited to, whether the Rule 23 Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime; and whether Defendant violated PMWL by failing to pay Plaintiff and the class overtime compensation for hours worked in excess of forty (40) hours per workweek.

99.     Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not promote judicial efficiency or equity, nor necessarily give consistent results. Class certification will eliminate the need for duplicate litigation.

100.     Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted, or has refused to act, on grounds generally applicable to the Rule 23 class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

101.     Plaintiffs will fully and adequately protect the interests of the class. Plaintiffs seek the same recovery as the class, predicated upon the same violations of law and the same damage theory. Plaintiffs have retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the class.

## CLASS ACTION ALLEGATIONS UNDER PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

99.     Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and other current and former employees who worked for Defendant as AETs in Pennsylvania.

100.     The class Plaintiffs seeks to represent is defined as:

> All individuals who are or were employed by Defendant as salaried AETs and/or in similar positions in the state of Pennsylvania, and who have been denied overtime compensation as required by the respective state labor laws and implementing regulations at any time within three (3) years prior to the filing date of this action through the date of final disposition (the "proposed class").

101.     The proposed class is so numerous that joinder of all members is impracticable. During the relevant period, Defendant employed dozens of AETs in the state of Pennsylvania.

102.     The claims of the named Plaintiffs are typical of the members of the proposed class. The named Plaintiffs and those similarly situated regularly worked more than forty (40) hours per week and were denied overtime compensation. Each member of the class was paid a

salary that remained unchanged, regardless of the number of hours they worked each week. As a result, each and every class member suffered the same harm.

103.    Each class member's claim is controlled by Pennsylvania's wage and hour statutory scheme and one set of facts. Pursuant Fed. R. Civ. P. 23(b)(3), questions of law and fact are common to the class and predominate over any individual questions. Such common questions of law and fact include, but are not limited to, whether the Rule 23 Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime; and whether Defendant violated WPCL by failing to pay Plaintiff and the class all due wages.

104.    Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting dozens of identical, individual lawsuits would not promote judicial efficiency or equity, nor result in consistent results. Class certification will eliminate the need for duplicate litigation.

105.    Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted, or has refused to act, on grounds generally applicable to the Rule 23 class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

106.    Plaintiffs will fully and adequately protect the interests of the class. Plaintiffs seek the same recovery as the class, predicated upon the same violations of law and the same damage theory. Plaintiffs have retained counsel who are qualified and experienced in the prosecution of

statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the class.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I.  Violation of the FLSA: Failure to Pay Overtime Wages

107.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

108.    Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

109.    As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed completely to compensate Plaintiffs for these additional hours.

110.    Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked.

111.    There is no bona fide dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

112.    Under the FLSA, Plaintiffs are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times their regular hourly wage rate.

### Count II. Violation of 29 C.F.R. § 516, et seq.: Failure to Maintain Required Records

113.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

114.    29 C.F.R. § 516.1 subjects, "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

115.    The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

116.    As Plaintiffs' employer, Defendant was subject to the FLSA's record keeping requirements.

117.    Defendant's obligations were to maintain and preserve payroll or other records containing, without limitations, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

118.    Defendant failed to maintain and preserve accurate timesheets and payroll records as required by 29 C.F.R. § 516.2.

119.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) is controlling.  The rule states:

> [w]here the employer's records are inaccurate or inadequate…an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

120.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the

FLSA.  Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with…the Act." *Id.*

121.   As a result of Defendant's recordkeeping violations, Plaintiffs seek a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

## *Count III. Violation of the Pennsylvania Minimum Wage Act: Failure to Pay Wages Owed*

122.   Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

123.   Pursuant to the Pennsylvania Minimum Wage Act, each employer shall pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

124.   Plaintiffs and the Rule 23 class are non-exempt employees entitled to overtime compensation for all hours worked in excess of forty (40) per workweek.

125.   Plaintiffs and the proposed Rule 23 class work(ed) in excess of forty (40) hours per week, but did not receive the appropriate overtime compensation from Defendant.

126.   Defendant willfully and intentionally failed to compensate Plaintiffs and the rule 23 class for the overtime hours they worked.

127.   There is no bona fide dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

128.   Defendant acted willfully and with reckless disregard of clearly applicable provisions of the PMWA.

129.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the class have suffered and will continue to suffer a loss of income and other damages.

### *Count IV. Violation of the Pennsylvania Wage Payment and Collection Law: Failure to Pay Wages Owed*

130.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

131.     The Pennsylvania Wage Payment and Collection Law requires that an employer pay all wages due to its employees.  43 P.S. § 260.3.

132.     Defendant has intentionally failed to pay wages due to employees for purposefully failing to pay employees for the correct number of hours they have worked.

133.     Pursuant to 43 P.S. § 260.9 and 260.10, employers, such as Defendant who intentionally fail to pay an employee wages in conformance with the WPCL, shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

134.     Defendant does not have written authorization from Plaintiffs or Class Members to withhold, divert, or deduct any portion of his or her wages that concern this action.

135.     Defendant violated the Pennsylvania law by failing to pay Plaintiffs and Class Members for all compensable time and by failing to pay Plaintiff and the Class Members for work time, including overtime, at the established rate.

### *Count V. Unjust Enrichment*

136.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

137.     Defendant has received and benefitted from the uncompensated labor of Plaintiffs and the Class Members, such that to retain such benefit without compensation would be inequitable and unjustly enrich Defendant.

138.     At all times relevant hereto, Defendant devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff and the Class Members without paying total compensation and overtime for hours worked.

139.     Contrary to good faith and fair dealing, Defendant induced Plaintiffs and the Class Members to perform work while failing to pay total compensation and overtime for hours worked as required by law.

140.     By reason of having secured the work and efforts of Plaintiffs and the Class Members without paying total compensation and overtime as required by law, Defendant enjoyed reduced labor costs and consequentially additional earnings and profit to its own benefit.

141.     Therefore, Plaintiffs and the Class Members are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant, plus all other damages allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated, pray for the following relief:

a)     Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b)     Designation of this action as a class action on behalf of Plaintiffs and all members of the proposed class;

c)     Ordering Defendant to produce a list of all current and former AETs;

d)     Pursuant to 29 U.S.C. § 216(b) sending prompt notice of this litigation to all potential Class members;

e)      A finding that Defendant's classification of Plaintiffs and similarly situated employees as exempt was done in error;

f)      Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

g)      Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by PMWA;

h)      Judgement against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the WPCL;

i)      An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' regular hourly rate for all overtime hours worked, to Plaintiffs and those similarly situated;

j)      An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

k)      An award of treble damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

l)      An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant;

m)      Leave to add additional plaintiffs, opt-in or party, through the filing of consent forms; and

n)      All further relief deemed just and equitable by this Honorable Court.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

/s/ *Kenneth J. Hardin, II*
Kenneth J. Hardin, II, Esquire
*kenhardin@hardinlawpc.net*
Kayla H. Drum, Esquire
*kdrum@hardinglawpc.net*

Hardin Thompson P.C.
The Frick Building
437 Grant Street
Suite 620
Pittsburgh, PA 15219
Phone:  (412) 315-7195
Fax:      (412) 315-7386

/s/ *Benjamin L. Davis, III*
Benjamin L. Davis, III, Esquire
*bdavis@nicholllaw.com*
George E. Swegman, Esquire
*gswegman@nicholllaw.com*
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Phone: (410) 244-7005
Fax:      (410) 244-8454

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE FLSA COLLECTIVE CLASS**