IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIAN ALESIUS,<br>BRENDAN BEAULIEU,<br>BRIAN STENSTROM,<br>ROBERT WATERHOUSE, and NICK CUSOLITO, individually<br>and on behalf of all similarly situated employees,<br><br>             Plaintiffs,<br><br>   v.<br><br>PITTSBURGH LOGISTICS SYSTEMS,<br>INC. d/b/a PLS LOGISTICS SERVICES,<br><br>             Defendant. | Civil Action No. 20-1067<br><br>Judge Marilyn J. Horan |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Christian Alesius, Brendan Beauliu, Robert Waterhouse, Nick Cusolito, and Matt Dickson, individually and on behalf of others similarly situated, bring the present collective action against Defendant Pittsburgh Logistics Systems, Inc. d/b/a PLS Logistics Services, for overtime payment as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* (Counts I and II), the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41 (Count III), the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.3 (Count IV), and a state-law claim for unjust enrichment (Count V). (ECF Nos. 1 & 56).

Plaintiffs' Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees is presently before the Court. (ECF No. 30). The Court held a Conditional Class Certification Hearing on January 18, 2022, and following a period of additional briefing, the matter is now ripe for consideration.

After consideration of Plaintiffs' Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees and the accompanying brief (ECF Nos. 30 & 31), PLS Logistics' Response in Opposition and the accompanying brief (ECF Nos. 34 & 35), Plaintiffs' Reply Brief (ECF No. 36), PLS Logistics' Addendum in Support of its Brief in Opposition (ECF No. 64), Plaintiffs' Response to PLS Logistics' Addendum (ECF No. 65), Plaintiffs' Supplement in Response to PLS Logistics' Addendum in Support (ECF No. 66), PLS Logistics' Response to Plaintiffs' Supplement (ECF No. 67), and the arguments of counsel, Plaintiffs' Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees is granted as to conditional certification and deferred as to court authorized notice.

## I. Statement of the Facts

PLS Logistics is a logistics and transportation company with its principal corporate office in Cranberry Township, Pennsylvania. (ECF No. 1, ¶¶ 4-5). The company has over ten offices throughout the country, and its annual revenue exceeds $500,000. (ECF No. 1, ¶¶ 6, 8).

Plaintiffs worked at PLS Logistics as Account Executive Trainees (AETs). (ECF No. 1, ¶¶ 18-21). Their primary role was to identify and obtain new clients and assist with providing support services for existing clients. (ECF No. 1, ¶¶ 33-34). In their jobs as AETs, the Plaintiffs were required to identify potential clients through internet searches and to contact those leads in hopes of obtaining their business. (ECF No. 1, ¶ 34).

After a successful sale, the AET would then become the direct point of contact for the new client. (ECF No. 1, ¶¶ 37-38). The AETs were responsible for handling the logistics for any scheduled deliveries for said clients. (ECF No. 1, ¶¶ 38-42). This included scheduling trucking services through third-party freight transporters. (ECF No. 1, ¶ 39). To help ensure that the deliveries were successfully completed, the assigned AET was required to provide his or her

personal cell phone number to the freight transport truck drivers so the AET could be reached by telephone at any time, day or night. (ECF No. 1, ¶ 43).

The Complaint alleges that the Plaintiffs were paid an annual salary for which they adequately performed all of their duties to satisfy the job requirements of their respective position. (ECF No. 1, ¶¶ 55, 56). Due to the nature of their jobs, the Plaintiffs routinely worked more than forty hours per week, sometimes working up to sixty or seventy hours per week. (ECF No. 1, ¶¶ 60-69). Although the Plaintiffs allegedly reported to their supervisors that they were routinely working more than forty hours per week, PLS Logistics did not adjust their work responsibilities or pay Plaintiffs overtime wages. (ECF No. 1, ¶¶ 70-74).

## II.     Discussion

### a. Conditional Certification

Plaintiffs request that the Court conditionally certify as a class: "all other Account Executive Trainees who were paid a salary and were employed with Defendant within three (3) years prior to the filing of the Complaint." (ECF No. 31, at 10). Plaintiffs argue that they can satisfy their lenient burden of identifying a common policy or practice alleged to violate the FLSA, namely that the AETs were regularly required to work more than 40 hours per week for which they were not paid overtime wages. (ECF No. 31, at 5). PLS Logistics argues that the Court should deny conditional certification at this time because there has not yet been any discovery completed in the case. (ECF No. 35, at 2-5).

Section 7 of the FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week. 29 U.S.C. § 207(a). Under the FLSA, a plaintiff may bring a collective action on behalf of themselves "and other employees similarly situated" to recover unpaid overtime compensation. 28 U.S.C. § 216(b).

Courts in the Third Circuit "follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). At the first step, "the court makes a preliminary determination as to whether the named plaintiffs have made a modest factual showing that the employees identified in their complaint are similarly situated." *Id.* A plaintiff's burden at the first step is light and can be met by "produc[ing] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011), *rev'd on other grounds sub nom.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013). If this burden is satisfied, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243.

Given the "modest burden" at the first stage of the proceedings, "motions for conditional certification are generally successful." *Id.* "Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016) (citation omitted). To satisfy the lenient standard of granting conditional certification, plaintiffs must only present "some evidence, beyond mere speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected the other employees." *Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418, at *3 (W.D. Pa. Nov. 5, 2013). "Generally, plaintiffs meet the standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members." *Id.* At the step one inquiry, the Court does not weigh the evidence, resolve

4

factual disputes, or reach the merits of plaintiff's claims. *See Pereira v. Foot Locker*, 261 F.R.D. 60, 67 (E.D. Pa. 2009); *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 353 (W.D. Pa. 2018). For example, the fact "[t]hat potential plaintiffs held different jobs, in different departments, in different locations does not preclude conditional certification because all were subjected to the same allegedly unlawful policy." *Id.* at 352-53.

At the second step, "with the benefit of discovery," the district court "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Camesi*, 729 F.3d at 243. The second step can be "triggered" by "the plaintiff's motion for 'final certification,' by the defendant's motion for 'decertification,' or, commonly, by both." *Id.* Determining whether class members are similarly situated during the second stage "generally requires the consideration of three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, *2 (W.D. Pa. Dec. 20, 2011) (citations omitted). While the district court looks at "whether 'similarly situated' plaintiffs do in fact exist," in the first stage, "at the second stage, the District Court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012). "Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete." *Bowser*, 324 F.R.D. at 352.

PLS Logistics argues that conditional certification should not be granted because there has not yet been any discovery completed in the case. Plaintiffs argue that they can allege facts to satisfy the Third Circuit's lenient standard for conditional certification and that discovery does

not need to be completed for the Court to grant conditional certification of their proposed class. Plaintiffs have alleged that PLS Logistics has a policy and practice of regularly requiring AETs to work more than 40 hours per week. Plaintiffs allege in their Complaint that PLS Logistics had a "24/7" work environment and that the AETs were required to provide their cell phone numbers to help with shipments at all hours of the day and night. Additionally, Plaintiffs allege that AETs were required to work from the hours of 7:45 a.m. to 5:15 p.m. with a one-hour lunch break and were also required to work one Saturday each month from 8:00 a.m. to 12:00 p.m. (ECF No. 31, at 9). Thus, the AETs were required to work regularly scheduled hours of 42.5 hours per week, and they were also required to work 46.5 hours for one week per month. (ECF No. 31, at 9). This fact alone, in addition to the allegations of being on call at all hours of the day and night, satisfies the modest showing required at the first stage of conditional class certification.

      PLS Logistics also argues that the named Plaintiffs are not similarly situated because they worked in different locations throughout the country and their salaries varied between $35,000 and $42,000. (ECF No. 35, at 5-6). Although the named Plaintiffs may work in different locations and their salaries vary slightly, the Plaintiffs in the proposed class all worked as AETs. At this stage, Plaintiffs have alleged enough facts to suggest that the potential opt-in plaintiffs worked additional hours beyond 40 hours per week on a regular basis. Because the first step of the class certification inquiry is a lenient standard, Plaintiffs have satisfied their burden of proving that the proposed Plaintiffs are similarly situated for the purposes of granting conditional certification. Any determination on the merits of PLS Logistics' arguments are better reserved for the second step of the class certification inquiry after discovery has been completed.

      PLS Logistics also argues in its Response to Plaintiffs' Motion to Conditionally Certify the Class that named Plaintiffs Alesius and Stenstrom are not similarly situated because they did

not work as AETs throughout their entire careers at PLS Logistics. (ECF No. 35, at 5). Since PLS Logistics filed their Response, the case has been stayed as to Plaintiff Alesius because it has been stipulated by the parties that he has signed a valid arbitration agreement. (ECF No. 61). Additionally, Plaintiff Stenstrom was dismissed from the case by stipulation and agreement of the parties. (ECF No. 58). As such, PLS Logistics' arguments, regarding Plaintiffs Alesius and Stenstrom, are deemed moot.

In conclusion, and under the lenient standard at the conditional class certification stage, the Court hereby conditionally certifies as a class: "all other Account Executive Trainees who were paid a salary and were employed with Defendant within three (3) years prior to the filing of the Complaint."

    b. Notice

PLS Logistics argues that notice should not be sent to any potential opt-in plaintiffs who have signed mutual arbitration agreements. (ECF No. 64, at 2). Plaintiffs argue that notice should be sent to all potential opt-in plaintiffs, regardless of whether they signed an arbitration agreement, and that any issues related to arbitration can be resolved after notice has been sent out. (ECF No. 66, at 1).

Both parties cite *Bruno v. Wells Fargo Bank, N.A.*, No. 2:19-cv-587-RJC, 2021 WL 964938 (W.D. Pa. Mar. 15, 2021), in support of their positions. In that case, Judge Colville permitted notice to be sent to potential plaintiffs who had signed arbitration agreements. *Id.* at *6. Wells Fargo then filed an Expedited Motion to Certify Interlocutory Appeal regarding the question of whether notice should be sent to the arbitration plaintiffs. *Bruno v. Wells Fargo Bank, N.A.*, No. 2:19-cv-587-RJC, 2021 WL 1550076, at *1 (W.D. Pa. Apr. 20, 2021). Judge Colville certified Wells Fargo's questions for interlocutory appeal, and the case is presently

before the Third Circuit at Case Number 21-2734. The case has been fully briefed, and the parties are currently awaiting a decision from the Third Circuit.

However, the Fifth and Seventh Circuit Courts of Appeals have considered this issue and have declined to issue notice to potential plaintiffs who have signed arbitration agreements. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 498 (5th Cir. 2019). Given the absence of present Third Circuit precedent on the issue, this Court adopts the reasoning of the Seventh Circuit Court of Appeals, such that notice will not be directed to be sent to employees who are subject to valid arbitration agreements. The Seventh Circuit explains:

> when a defendant opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements, the trial court must take specific steps:
>
> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.
>
> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements. But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged "arbitration employees"—the court must permit the parties to submit additional evidence on the agreements' existence and validity. The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

*Bigger*, 947 F.3d at 1050.

Under this framework, the Court must first consider whether Plaintiffs have contested PLS Logistics' assertions about the existence of valid arbitration agreements. In Plaintiffs' Supplemental Briefing on Defendant's Addendum, Plaintiffs challenge the

validity of the arbitration agreements signed by the potential opt-in plaintiffs.[1]  (ECF No. 66, at 3).  While Plaintiffs admit that Plaintiffs Alesius, Cusoltio, and Dickson's arbitration agreements are all valid, they do not admit the validity of the arbitration agreements of all other potential opt-in employees.  (ECF No. 66, at 3).

As Plaintiffs have challenged the validity of the arbitration agreements, the Court now considers step two of the *Bigger* framework.  Because Plaintiffs have challenged PLS Logistics' assertions about the validity of the arbitration agreements, the Court orders a period of limited discovery on the issue of the existence and validity of arbitration agreements signed by potential opt-in employees.  As such, PLS Logistics shall provide Plaintiffs with a list of all potential employment and arbitration agreements for potential opt-in employees that PLS Logistics seeks to exclude from notice.  The disclosures shall be redacted to remove any indication of the identity of said potential opt-in employees.  As the Court orders a period of limited discovery, the Court defers its decision on whether the plaintiffs who have signed arbitration agreements should receive notice and the appropriate method of notice for the class.

### III.     Conclusion

Based on the foregoing, Plaintiffs' Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees is granted as to the issue of conditional class certification and deferred as to the issue of notice.  The Court orders a period of limited discovery as regards employment and arbitration agreements between PLS Logistics and potential opt-in PLS Logistics employees.  Discovery as to the employment and arbitration agreements, with employee identity redacted, shall occur between Plaintiffs and

---

[1] As regards the issue of validity, from the sampling of the arbitration agreements provided in the briefing, it appears that the parties to said agreements have agreed that validity is determined by the arbitrator.

Defendant, to be completed by March 24, 2022. The Plaintiffs' Brief on the issue of notice shall be filed by April 14, 2022, and Defendant's Response shall be filed by April 28, 2022. A hearing on the issue of notice is scheduled for May 9, 2022 at 10:30 AM in a Video Conference. Chambers staff will send information on accessing the Video Conference in advance.

DATE: 2/9/2022

Marilyn J. Horan
United States District Judge